UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PRIMELENDING, A PLAINSCAPITAL COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:22-cv-01042 |
| v. | ) | |
| | ) | |
| FIRST COMMUNITY MORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant First Community Mortgage, Inc.'s ("FCM")

Motion to Stay Litigation Pending Arbitration, or in the Alternative, Motion to Dismiss for Failure

to Join Indispensable Parties Under Federal Rule of Civil Procedure 19 (Doc. No. 17). Plaintiff

PrimeLending, a PlainsCapital Company, ("PrimeLending") responded (Doc. No. 28), and FCM

filed a reply. (Doc. No. 34). For the following reasons, the Court will deny the motion.

## I.     FACTUAL ALLEGATIONS AND BACKGROUND[1]

On September 1, 2022, over 100 employees from PrimeLending's Mid-America regional

division resigned without notice to work for FCM, PrimeLending's direct competitor, and took

with them PrimeLending's customer records, pipeline reports, loan estimations, and other

confidential information. (Doc. No. 1 ¶¶ 8–9, 11). That same day, PrimeLending received a letter

from FCM's counsel, notifying them that it had orchestrated the corporate raid. (Doc. No. 1 ¶ 14).

In the letter, FCM explained that it had worked with PrimeLending's long-time corporate recruiter,

---

[1] The Court relies on the relevant factual allegations from the Complaint (Doc. No. 1) and assumes they are true for purposes of ruling on the instant motion. See _Erickson v. Pardus_, 551 U.S. 89, 94 (2007).

CAVU Partners ("CAVU"), and CAVU's Gary Sindall, to facilitate and assist with recruiting PrimeLending employees over a four-month period.  (Doc. No. 1 ¶ 14).  Soon after, PrimeLending discovered that CAVU and Sindall had done so by working closely with the managers of the departed employees, including regional manager Bret Head.  (Doc. No. 1 ¶¶ 12, 15).

Before it assisted in the alleged corporate raid, CAVU and Sindall had maintained a business relationship with PrimeLending for over eleven years.  (Doc. No. 1 ¶ 22).  As part of that relationship, PrimeLending shared highly confidential and sensitive information about its financial performance, strategic planning, existing and potential products and services, significant client relationships, sales strategies, and compensations policies and practices.  (Id. ¶ 25).  PrimeLending also gave CAVU and Sindall access to its employees so that they could better assess PrimeLending's needs.  (Id. ¶ 26).  Such information was covered by the Confidential and Protection of Information and Non-solicitation provisions in the contract between the parties (the "Recruiting Agreement").  (Doc. No. 1-1 ¶¶ 8, 10).  Although the Recruiting Agreement expired on June 12, 2020, CAVU and Sindall continued to provide the same services at least until July 21, 2022 (well after FCM allegedly began working with CAVU and Sindall).  (Doc. No. 1 ¶¶ 28, 32).

Similarly, Head held several key positions in PrimeLending's management since he joined the company in 2016, and, by holding those positions, he became intimately aware of PrimeLending's fundamental business, policy decision-making, and strategic planning.  (Doc. No. 1 ¶¶ 34, 36).  He and the other departed employees were also bound by their employment agreements that contained provisions on exclusivity, non-solicitation, non-interference, and confidentiality.[2]  (Id. ¶¶ 38–46).

---

[2] Unlike the Recruiting Agreement, Head and PrimeLending's contract includes an arbitration agreement (the "Arbitration Agreement").  (Compare Doc. No. 1-1; with Doc. No. 18-1 at 18–31).

On December 20, 2022, PrimeLending filed the instant action against FCM, seeking to recover at least $30,000,000 in damages and alleging that FCM (1) misappropriated PrimeLending's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.*; (2) tortiously interfered with CAVU's explicit and implied contractual obligations, as well as with the contractual obligations of former PrimeLending employees; and (3) aided and abetted Bret Head in the breach of common law fiduciary duties owed to PrimeLending as its employee. (Doc. No. 1 ¶¶ 64–113).

That same day, PrimeLending sent a Demand for Arbitration & Statement of Claims (Doc. No. 18-1) to JAMS, Head, and Head's attorney, seeking $30,000,000 in damages based on his actions in the alleged corporate raid. (Id. at 10–17). And two months before initiating this case or its arbitration with Head, PrimeLending filed a lawsuit in the federal court in Georgia, seeking the same amount from CAVU and Sindall for their involvement in the corporate raid.   (See generally PrimeLending v. CAVU Partners, LLC, et al., No. 1:22-cv-04200, ECF No. 1 (N.D. Ga. Oct. 21, 2022)).

Now, FCM seeks to stay this case until PrimeLending's arbitration with Head resolves, or, in the alternative, dismiss this case in its entirety for failure to join CAVU, Sindall, and Head. (Doc. No. 17).

II.     DISCUSSION

   A.   FCM's Motion to Stay Litigation Pending Arbitration

Despite not being a party to the Arbitration Agreement, FCM requests that this Court, in its discretion, stay all litigation until the arbitration between PrimeLending and Head is resolved. (Doc. No. 18 at 5). Such a stay is not unheard of. As the Supreme Court has explained, "it may

be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 n.23 (1983). "Several district courts in the Sixth Circuit have found such a stay appropriate where a decision in one forum could affect the resolution of claims in another; where the non-arbitrable claims depend on the same facts and are inherently inseparable from the arbitrable claims; or where the arbitration may resolve issues in the lawsuit and/or promote the federal policy in favor of arbitration." Concrete Jungle, LLC v. INCON Commercial Lending, Inc., No. 16-14114, 2017 WL 4535916, at *13 (E.D. Mich. Oct. 11, 2017).  However, the "decision is one left to the district court . . . as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23.

FCM argues that the presence of all three criteria identified in Concrete Jungle warrants the requested stay.  (Doc. No. 18 at 6).  However, throughout its argument, the company severely overstates Head's role in the corporate raid as described in the Complaint (Doc. No. 1).  As alleged, Head was one of many FCM managers coordinating with CAVU and Sindall, (Doc. No. 1 ¶ 15), and one of upwards of 100 employees who took PrimeLending's confidential information or trade secrets to FCM.  (Id. ¶ 76).  Apart from Count III, the Complaint would read substantively the same if every reference to Head were removed.  (See generally Doc. No. 1 (referencing Head in only eight factual allegations, half of which merely describe his employment at PrimeLending)). It may be that Head was central to the corporate raid, but without plausible supporting allegations the Court will not speculate as to how. This case concerns far more than the actions of one man. Head's arbitration is scheduled to end in just under three months.  (See Doc. No. 28-1 at 4 (indicating the final hearing date is December 11, 2023)).  There is work to be done in the interim, and the parties and their counsel are plenty capable of sequencing discovery to avoid waste.

B.  FCM's Motion, in the Alternative, to Dismiss for Failure to Join Indispensable Parties

FCM then argues, in the alternative, that this Court should dismiss the case in its entirety pursuant to Federal Rule of Civil Procedure 19 ("Rule 19") for failure to join CAVU, Sindall, and Head.  As both parties acknowledge, a party must be joined if: "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the same subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1).

FCM's discussion of these conditions is cursory.  (See Doc. No. 18 at 17–18 (being roughly one page).  The company's briefing exclusively takes up the first condition—complete relief— arguing that the non-parties: (1) should be permitted to defend themselves against these claims; (2) are involved in other proceedings premised on the same underlying facts; and (3) "may suffer a very real risk of duplicative litigation."  (Id.; Doc. No. 34 at 5).  But "[t]he complete relief requirement concerns the ability of the already-included defendants to fully satisfy any judgment awarded to the plaintiff," Camps v. Gore Cap. LLC, No. 3:17-cv-1039, 2019 WL 2763902, at *10 (M.D. Tenn. July 2, 2019) (citation omitted), not "any subsequent relief via contribution or indemnification for which the absent party might later be responsible."  Norfolk S. Ry. Co. v. Baker Hughes Oilfield Operations, LLC, 443 F. Supp. 3d 877, 884 (S.D. Ohio 2020) (internal quotation marks and citation omitted); see also Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dept. of Educ., 584 F.3d 253, 265 (6th Cir. 2009) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought") (internal quotation marks and citation omitted).  FCM makes no effort to explain how

5

it could not fully satisfy a judgment in PrimeLending's favor, (Doc. No. 18 at 17–18), and, in any event, the concerns it raises are plainly outside the ambit of Rule 19(a)(1)(A).[3]

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay Pending Arbitration (Doc. No. 17) will be **DENIED**, and its Motion, in the Alternative, Dismiss for Failure to Join Indispensable Parties (Doc. No. 17) will be **DENIED WITHOUT PREJUDICE**.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] FCM's decision to seek dismissal only in the alternative underscores the argument's tenuity. If the Court stayed the case pending the resolution of Head's arbitration, these supposed jurisdictional issues would remain. This, taken with the practical effect of FCM's argument—that the mere existence of Head's arbitration agreement absolves FCM of all liability for its role in the alleged corporate raid—need not be toiled over.